LAGALEPATU S. SAVEA and
MO'OMIA SAVEA LEATIGAGA, for Themselves
and on Behalf of the SAVEA FAMILY,
Plaintiffs

v.

ELEKISE TUNU, LUKI TUNU, MAKELITA TOSI SAVEA,
AOLELE AGAESE and CHILDREN, ALESANA FITIAO,
MATAUAINA FITIAO and CHILDREN, and
TAUGAOLA and CHILDREN, Defendants

High Court of American Samoa
Land and Titles Division

LT No. 14-92

June 9, 1993

Before RICHMOND, Associate Justice, and VAIVAO, Associate Judge.

Counsel: For Plaintiffs, Gata E. Gurr
For Defendants Elekise Tunu, Luki Tunu, Makelita Tosi Savea,
Aolele Agaese and Children, and Taugaola
and Children, Afoa L. Su'esu'e Lutu
For Defendants Alesana Fitiao, and Matauaina Fitiao
and Children, Steven H. Watson

This action seeks injunctive relief for eviction from communal land and compensation for damage to a house on the land, the land itself, and a water well on the land. Trial was held on May 5-6, 1993. After plaintiffs Lagalepatu S. Savea ("Lagalepatu") and Mo'omia Savea Leatigaga ("Mo'omia") completed the presentation of the plaintiffs' evidence, defendants moved for dismissal, pursuant to T.C.R.C.P. Rule 41(b), on the ground that upon the facts and the law plaintiffs had shown

no right to relief. The motion was granted with respect to the action for eviction, and the decision was deferred with respect to the action for damages until the close of all the evidence.

## FINDINGS OF FACT

1. Lagalepatu is a blood matai (or chief) male member of the Savea family over age 18. Mo'omia is his sister. The matai title Savea, as the sa'o (or head) of the extended Savea family, is vacant. However, at least two blood matai male members of the family are living.

2. The land at issue is a portion of the Savea family's communal land, known as "Tagapofu," located in the Village of Matu'u, American Samoa.

3. Lagalepatu lived on the land from his birth in 1929 until 1978. He lived in California from 1978 until early 1992, when he returned following the last Savea's death. His overseas residency was interrupted by one six-month visit to American Samoa in 1986-1987.

4. The water well at issue on the land was developed by Lagalepatu's parents.

5. The house at issue on the land was constructed in 1966 and is owned by Lagaleatu.

6. Defendants Luki Tunu and Elekise Tunu (the "Tunus"), who are husband and wife, lived in the house from 1987 until shortly after Hurricane "Val" struck American Samoa in December 1991. They now live in a nearby house, which was constructed in 1992.

7. Thinking that they were buying the house, the Tunus paid $2,000 to one of Lagalepatu's sons, who was living in the house in 1987. The Tunus also made some improvements to the house. However, they learned about Lagalepatu's claim to the house upon his return in 1992 and now concede his ownership of it.

8. Hurricane "Val" rendered the remaining defendants' neighboring houses uninhabitable. They moved into the house as the most suitable place for temporary shelter during or immediately after the hurricane. They have since relocated to other structures.

9. Except for the center post and some wall and ceiling holes in the house and the water well, the damage to the house and debris on the surrounding land was proximately caused by Hurricane "Val" and not by any of the defendants. This hurricane either destroyed or damaged all houses in the Village of Matu'u. Judicial notice is taken of the devastation it wrought throughout much of American Samoa, lingering for some five days in the Territory.

10. Because the center post was rotten when they moved into the house and their daughter had been injured due to its deterioration, the Tunus did cut out the post in 1987. No evidence was presented on the repair or replacement cost. The wall and ceiling holes not caused Hurricane "Val" were also present in 1987.

11. The water well had become unfit for human use by 1980. In 1986 or 1987, public health officials of the American Samoa Government and the sa'o of the Savea family directed that it be filled. The fill was done by Lagalepatu's son, who was then living in the house.

## CONCLUSIONS OF LAW

1. A.S.C.A. § 41.1309(b) strictly defines the persons who are authorized to seek injunctive relief in actions concerning disputes or controversies over communal land. The sa'o of a family is the only person who bring such an application in the first instance. Alternatives are available only if the matai title of the sa'o is vacant or the sa'o is incapacitated. In that event, the application must first be sought by two blood matai male members of the family over age 18. Two blood members of the family over age 18, if either is untitled or a female, may apply for injunctive relief only when the sa'o position is vacant or the sa'o is incapacitated and the family does not have two blood matai male members. Since the Savea family has two or more blood matai male members, Lagalepatu and Mo'omia lack the requisite capacity to sue for an injunction to evict defendants. Thus, the aspect of the action must be and was dismissed as to all defendants.

2. The concession by the Tunus to Lagalepatu's ownership of the house may well lead to some liability on their part for removing the center post. However, the post's deteriorated condition, requiring repair or replacement, was Lagalepatu's responsibility. Moreover, one of his sons victimized the Tunus into thinking that they were buying the house. The amounts that they paid for this purported purchase and later improvements certainly exceeded the unestablished cost of the post's

65

repair or replacement. Lagalepatu or this son was also responsible for the wall and ceiling holes existing at the time the Tunus moved into the house. Hurricane "Val," not any of the defendants, was the sole proximate cause of the remaining damage to the house and the debris deposited on the land. Thus, the action for compensatory damages must be and is also dismissed.

3. In accordance with T.C.R.C.P. Rule 41(b), the dismissals of both causes of action operate as an adjudication on the merits.

Judgment shall enter accordingly. It is so ordered.